# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| JESSICA CANTRELL,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a AMTRAK,<br><br>Defendants. | CV-17-135-GF-BMM<br><br>ORDER |

The Court conducted a trial in this matter on May 13, 2019 through May 15, 2019. (Docs. 78, 82, 83.) The jury returned a verdict on May 15, 2019. (Doc. 92.) The jury found Amtrak partially liable for the injury sustained by Plaintiff Jessica Cantrell ("Cantrell"). The jury apportioned 75% of the negligence to Cantrell, however, and 25% of the negligence to Amtrak. The jury's apportionment of negligence eliminated any need for the jury to consider the amount of damages to be awarded to Cantrell. The Court entered final judgment in this matter on May 16,

1

2019. (Doc. 93.) Cantrell filed a Motion for a New Trial on May 31, 2019. (Doc. 95.) Amtrak filed its Response in opposition to the Motion on June 4, 2019. (Doc. 97.) This Order addresses each of Cantrell's arguments in turn.

## LEGAL STANDARDS

A party may make a motion for a new trial pursuant to Fed. R. Civ. P. 59(a). Rule 59(a) "does not specify the grounds on which a motion for a new trial may be granted." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (*citing Zhang v. AM. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003)). A district court possesses discretion to order a new trial under Rule 59 if "the verdict is contrary to the clear weight of the evidence." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). A verdict proves contrary to the weight of the evidence if "the damages are excessive, or that, for other reasons, the trial was not fair to the moving party." *Molski*, 481 F.3d at 729 (*citing Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).

## DISCUSSION

Cantrell asserts the following arguments regarding whether the jury verdict proved contrary to the weight of the evidence: (1) Amtrak presented inconsistent conclusions regarding the weather data; (2) Amtrak presented evidence not disclosed in their damage expert's report; (3) Amtrak presented the jury with false

arguments and evidence; and (4) the Court presented the jury with an improper jury instruction.

## I. Weather Data

Cantrell asserts that the Court improperly took judicial notice of weather data (hereafter "Exhibit 502") for a location 24 miles away from Wolf Point. (Doc. 96 at 4.) The Court took judicial notice of Exhibit 502 described as the "Wolf Point McDonalds surface/atmospheric history." Cantrell raised no objection to the Court's decision to take judicial notice of the data. Cantrell likewise raised no objection to the admission of Exhibit 502 into evidence. Cantrell now argues that she assumed that the weather data was taken from Wolf Point, rather than from the weather station 24 miles north of Wolf Point. Cantrell argues that she based her assumption on the fact that a McDonald's restaurant exists near the Amtrak station. (Doc. 96 at 2.) Cantrell asks the Court to now view the Wolf Point Airport weather data as a reflection of the accurate weather conditions. *Id.* at 5.

An investigation by Cantrell should have revealed that the weather data was not taken from the McDonald's restaurant in Wolf Point. Such an investigation would have revealed that the data contained in Exhibit 502 was taken from the weather station 24 miles away. An objection to the weather data would have been appropriate before the Court admitted the evidence. Cantrell did not raise such an objection.

Cantrell further failed to ask the Court to take judicial notice of the Wolf Point Airport weather data at trial. Cantrell's request for the Court to take judicial notice of this data would have been appropriate before or during trial. The Court may not take post-trial notice of this evidence.

Cantrell further asserts that Amtrak argued inconsistent positions regarding the judicially noticed weather data. (Doc. 96 at 11.) Cantrell argues that Amtrak used the weather data to demonstrate that no precipitation existed before Ms. Cantrell's fall. *Id.* Cantrell argues that Amtrak then took the inconsistent position that the weather data was inaccurate to prove an "ice watch." *Id.*

Amtrak asserted at trial that Exhibit 502 determined that no precipitation fell for the 23 days before the Amtrak's train's arrival in Wolf Point on January 24, 2016. Amtrak then asserted that Exhibit 502 demonstrated that an "ice watch" meant merely that ice was forming 24 miles away. Cantrell failed to object to this evidence. Cantrell further failed to object to the jury instruction regarding the Court's judicial notice of Exhibit 502. Cantrell has waived her right to assert this objection. *See Zhang*, 339 F.3d at 1035. Cantrell's request for a new trial pursuant to Amtrak's use of the McDonalds surface/atmospheric history must be denied.

## II.   Medical Evidence

The Court limited the admission of Cantrell's pre-accident medical history. (Doc. 78.) The Court determined that Cantrell's choice to assert an established

4

course of life damage claim opened the door to the admission of limited medical history evidence. Cantrell asserts that Amtrak presented evidence that it did not disclose in its damage expert's report. (Doc. 96 at 11.) Cantrell argues that Dr. Goler testified improperly that Cantrell should have received injection therapy from her treating physician. (Doc. 96 at 11.) Cantrell argues that Amtrak improperly discussed Ms. Cantrell's medical history. *Id.*

Dr. Goler testified that he believed that Cantrell possessed access to certain available treatments. (Doc. 82.) Dr. Goler testified that he believed that Dr. Dacre did not administer such treatment because Cantrell suffered from diabetes, other medical issues, and weight. *Id.* Dr. Goler then stated, despite being told by defense Counsel to stop, that injection therapy constituted an available treatment for Cantrell. *Id.* Cantrell's counsel did not object to Dr. Goler's statement regarding Cantrell's medical history and the potential for injection therapy to treat her symptoms. Cantrell's counsel further did not request a curative instruction. Cantrell's failure to raise a contemporaneous objection and her denial of the Court's offer to provide a curative instruction, constituted a waiver of Cantrell's ability to raise this objection post-trial. *See Zhang*, 339 F.3d at 1035.

Dr. Goler further did not testify regarding issues of liability. The medical evidence presented by Amtrak did not impact the jury's verdict because the jury did not reach the issue of damages. Goler's mention of Cantrell's medical history

and injection therapy constituted mere harmless error in this context and did not prejudice the jury. *See Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329 (9th Cir. 1985).

### III. Government Entity

Cantrell asserts that Amtrak violated a motion in limine by stating during voire dire that Amtrak is a "government entity." Cantrell filed a motion in limine requesting that Amtrak be prohibited from discussing "jurors as taxpayers." (Doc. 39 at 12.) Cantrell stated in its motion that "[a]lthough defendant receives government funding, defendant is a for-profit corporation." *Id.* at 12-13.

Amtrak's counsel during voir dire asked potential jurors if they could provide parties with a fair trial even though Amtrak is a "government entity." (Doc. 78.) Cantrell did not object to the question. *Id.* Cantrell's counsel later raised the motion in limine violation at a side-bar. *Id.* Cantrell's counsel stated that the Amtrak's counsel inaccurately characterized Amtrak as a "government entity" because Amtrak makes over one billion dollars per year as a for-profit corporation. *Id*. The Court agreed that Amtrak's counsel had violated the motion in limine. *Id.*

The Court asked Cantrell's counsel if Cantrell desired a curative instruction. *Id.* Cantrell's counsel declined. *Id.* Cantrell's counsel reasoned that the statement would not cause prejudice unless it were discussed further to the jury. *Id*. The parties and the Court agreed that a curative instruction did not prove necessary

unless Amtrak's counsel again brought up Amtrak's status as a "government entity." *Id*.

Cantrell's failure to object and rejection of a curative instruction constituted a waiver of the argument that Amtrak violated the motion in limine. *See Zhang*, 339 F.3d at 1035. The parties and the Court at trial agreed that the single mention of Amtrak's government connection did not impact significantly the minds of the jurors. (Doc. 78.) Cantrell may not change positions post-trial and claim that the statement did have such impact. The characterization of Amtrak as a "government entity" constituted mere harmless error and did not prejudice the jury. *See Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329 (9th Cir. 1985).

### IV. Jury Instructions

Cantrell argues that a new trial should be granted pursuant to two improper jury instructions. (Doc. 96 at 12.) Cantrell first contends that jury instruction number 19 regarding judicially noticed weather data was improper. *Id.* Cantrell next contends that the instruction number 10 regarding "mere happening of an accident" proves outdated. *Id.* Instruction Number 10 states that "[t]he mere happening of an accident, nor the occurrence of a bad result alone, is not negligence." (Doc. 89 at 10.)

Cantrell failed to object to any jury instructions. A party's failure to object to a jury instruction at trial waives the party's ability to raise the objection

post-trial. *See Zhang*, 339 F.3d at 1035; *see also Milhouse v. Travelers Commercial Ins. Co.*, 982 F. Supp. 2d 1088, 1106 (C.D. Cal. Nov. 5, 2013). Cantrell's failure to raise an objection to these instructions constitutes a waiver of her right to raise a post-trial objection these instructions.

## CONCLUSION AND ORDER

Cantrell has failed to demonstrate that the weather data, medical evidence, "governmental agency" statement, and jury instructions constitute grounds for a new trial. The jury's verdict does not prove to be against the weight of the evidence. *See Murphy*, 914 F.2d at 187.

**ACCORDINGLY, IT IS ORDERED** that Cantrell's Motion for New Trial (Doc. 95) is **DENIED**.

DATED this 11th day of June, 2019.

_____
Brian Morris
United States District Court Judge